RECEIPT # 53870
AMOUNT $ 150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK Kim Abreu
DATE 2-13-04

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

RICHARD CURTIS, Individually And On Behalf Of )
All Others Similarly Situated, )
)
                               Plaintiffs, )
)
               vs. )
)
SONUS NETWORKS, INC., HASSAN M. AHMED )
and STEPHEN J. NILL, )
)
                     Defendants. )
)
)
)

**CASE NO.**

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

# 04 - 10314 MLW

MAGISTRATE JUDGE Bowler

Plaintiffs have alleged the following based upon the investigation of plaintiffs' counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Sonus Networks, Inc. ("Sonus" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal class action on behalf of purchasers of the securities Sonus between April 9, 2003 and February 11, 2004 inclusive (the "Class Period"), who have incurred damages, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). The action alleges that Sonus' Class Period financial statements and earnings announcements were materially false and misleading when made because the Company had been improperly recognizing revenues, thereby deceiving investors as to the Company's true results of operations and worth.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District, and Sonus is headquartered in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiffs Richard Curtis, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Sonus during the Class Period and has been damaged thereby.

7.      Defendant Sonus is incorporated under the laws of Delaware and maintains its principal executive offices at 5 Carlisle Road, Westford, Massachusetts 01886.

8.      Defendant Hassan M. Ahmed served as Sonus' President and Chief Executive Officer during the Class Period.

9.      Defendant  Stephen J. Nill served as Sonus' Chief Financial Officer.

2

10.    Defendants Ahmed and Nill are collectively referred to herein as the "Individual Defendants".

11.    During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Sonus was privy to confidential and proprietary information concerning Sonus, its operations, finances, financial condition, present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Sonus, as discussed in detail below. Because of their positions with Sonus, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12.    Each of the defendants is liable as a direct participant in, and a co-conspirator with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and directors were each a "controlling person" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their position of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Sonus' business.

13.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Sonus between April 9, 2003 and February 11, 2004, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the class period there were approximately 226 million Sonus shares outstanding, that actively traded on the Nasdaq National Market ("Nasdaq").

16.     While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Sonus or its transfer agent and may be

4

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violations of federal laws that is complained of herein.

18.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Sonus; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Materially False And Misleading
### Statements Made During The Class Period

21.    Sonus is a Westord, Massachusetts based provider of switches and

software used by communications service providers.

22.    The Class Period begins on April 9, 2003, with the release of Sonus'

financial results for the first quarter of 2003. In a press release, the Company reported the

following quarterly results:

> Revenues for the first quarter of fiscal 2003 were $16.0 million compared with $12.7
> million in the fourth quarter of fiscal 2002. Net loss for the first quarter of fiscal 2003
> was $4.4 million or $0.02 per share compared with a net loss for the fourth quarter of
> fiscal 2002 of $12.8 million or $0.07 per share. Revenues for the first quarter of fiscal
> 2002 were $21.2 million and the net loss for the first quarter of fiscal 2002 was $16.2
> million or $0.09 per share.

Commenting on the results, defendant Ahmed touted the Company's strong revenue growth,

stating as follows in relevant part:

> Our financial results for the first quarter reflected good progress toward our business
> objectives," said Hassan Ahmed, president and CEO, Sonus Networks. "We grew our
> revenues 27 percent over last quarter, and by continuing to manage our business with
> precision, we further narrowed our net loss. In Q1, we also continued to add new
> customers around the globe and made important additions to our product family.

23.    On May 9, 2003, the Company filed its Form 10-Q for the first quarter of

2003 with the SEC. The report reiterated the financial results as announced in the April 9, 2003,

press release. The report was signed by defendant Nill pursuant to the  requirements of the

Exchange Act. In addition, defendants Nill and Ahmed each signed a certification pursuant to

Section 302 Of The Sarbanes-Oxley Act Of 2002 representing, among other things, the

following:

> Based on my knowledge, this Quarterly Report does not contain any untrue statement of
> a material fact or omit to state a material fact necessary to make the statements made, in

light of the circumstances under which such statements were made, not misleading with
respect to the period covered by this Quarterly Report.

Based on my knowledge, the financial statements, and other financial information
included in this Quarterly Report, fairly present in all material respects the financial
condition, results of operations and cash flows of the Registrant as of, and for, the periods
presented in this Quarterly Report.

In addition, the quarterly report described the Company's revenue recognition policy as follows:

(e) Revenue Recognition

Sonus recognizes revenue from product sales to end users, resellers and distributors upon
shipment, provided there are no uncertainties regarding acceptance, persuasive evidence
of an arrangement exists, the sales price is fixed or determinable and collection of the
related receivable is probable. If uncertainties exist, Sonus recognizes revenue when
those uncertainties are resolved. In multiple element arrangements, in accordance with
Statement of Position 97-2 and 98-9, Sonus uses the residual method when
vendor-specific objective evidence does not exist for one of the delivered elements in the
arrangement. Service revenue is recognized as the services are provided. Revenue from
maintenance and support arrangements is recognized ratably over the term of the
contract. Amounts collected prior to satisfying the revenue recognition criteria are
reflected as deferred revenue. Warranty costs are estimated and recorded by Sonus at the
time of product revenue recognition.

24.    On July 10, 2003, Sonus Networks issued a press release announcing the

following results for the second quarter of 2003:

Revenues for the second quarter of fiscal 2003 were $21.4 million compared with $16.0
million for the first quarter of fiscal 2003 and $21.3 million for the second quarter of
fiscal 2002. Net loss for the second quarter of fiscal 2003 was $3.2 million or $0.01 per
share compared with a net loss for the first quarter of fiscal 2003 of $4.4 million or $0.02
per share and a net loss of $17.8 million or $0.09 per share for the second quarter of fiscal
2002.

As he had done the first quarter, defendant Ahmed praised the Company's seemingly strong

revenue growth, which he attributed to the Company's successful execution of its business plan:

We are pleased with the progress that we made in the second quarter, particularly with
our 33% sequential revenue growth," said Hassan Ahmed, president and CEO, Sonus
Networks. "We executed across all areas of the business – broadening and strengthening

7

our customer base, expanding our leading product offering, bolstering our balance sheet and advancing our drive to profitability.

      25.     On August 14, 2003, the Company filed its Form 10-Q for the second quarter of 2003 with the SEC. The report reiterated the financial results as announced in the July 10, 2003, press release. The report was signed by defendant Nill pursuant to the requirements of the Exchange Act. In addition, defendants Nill and Ahmed each signed a certification pursuant to Section 302 Of The Sarbanes-Oxley Act Of 2002 representing, among other things, the following:

> Based on my knowledge, this Quarterly Report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this Quarterly Report
>
> Based on my knowledge, the financial statements, and other financial information included in this Quarterly Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this Quarterly Report.

In addition, the quarterly report described the Company's revenue recognition policy as follows:

> (e) Revenue Recognition
>
> Sonus recognizes revenue from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, Sonus recognizes revenue when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, Sonus uses the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the arrangement. Service revenue is recognized as the services are provided. Revenue from maintenance and support arrangements is recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenue. Warranty costs are estimated and recorded by Sonus at the time of product revenue recognition.

26.     On September 23, 2003, Sonus announced that it had completed a public

offering of 17 million shares of common stock at a price of $7.75 per share. The Company

reaped gross proceeds of $131,750,000 in the offering.

27.     On October 8, 2003, Sonus issued a press release announcing the

following results for the third quarter of 2003:

> Revenues for the third quarter of fiscal 2003 were $28.6 million compared with $21.4
> million for the second quarter of fiscal 2003 and $7.4 million for the third quarter of
> fiscal 2002. Net income for the third quarter of fiscal 2003 was $1.2 million or $0.01 per
> diluted share compared with a net loss for the second quarter of fiscal 2003 of $3.2
> million or $0.01 per diluted share and a net loss of $21.6 million or $0.11 per diluted
> share for the third quarter of fiscal 2002.

Defendant Ahmed praised the Company's results, which marked the "fourth consecutive quarter

of revenue growth," stating as follows in relevant part:

> "This was a strong quarter for Sonus Networks, our fourth consecutive quarter of revenue
> growth," said Hassan Ahmed, president and CEO, Sonus Networks.  "Our revenues grew
> 34% sequentially to $28.6 million, reflecting increased market demand for packet
> telephony and the expanding number of customers who have adopted Sonus' solutions.
> We achieved an important milestone in reporting our first quarterly profit on a GAAP
> basis.  Additionally, we bolstered our balance sheet to capitalize on the opportunity
> ahead, adding $126 million to our cash and marketable securities through a common
> stock offering in September."

28.     On November 10, 2003, the Company filed its Form 10-Q for the third

quarter of 2003 with the SEC. The report reiterated the financial results as announced in the

October 8, 2003, press release. The report was signed by defendant Nill pursuant to the

requirements of the Exchange Act. In addition, defendants Nill and Ahmed each signed a

certification pursuant to Section 302 Of The Sarbanes-Oxley Act Of 2002 representing, among

other things, the following:

> Based on my knowledge, this Quarterly Report does not contain any untrue statement of
> a material fact or omit to state a material fact necessary to make the statements made, in

9

light of the circumstances under which such statements were made, not misleading with respect to the period covered by this Quarterly Report

Based on my knowledge, the financial statements, and other financial information included in this Quarterly Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this Quarterly Report.

In addition, the quarterly report described the Company's revenue recognition policy as follows:

(e) Revenue Recognition

Sonus recognizes revenue from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, Sonus recognizes revenue when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, Sonus uses the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the arrangement. Service revenue is recognized as the services are provided. Revenue from maintenance and support arrangements is recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenue. Warranty costs are estimated and recorded by Sonus at the time of product revenue recognition.

     29.    statements referenced in ¶¶ 22-25 and 27-28, above, were each materially

false and misleading because they failed to disclose and misrepresented the following material

adverse facts, among others:

     a.    that defendants had been improperly recognizing revenue, in

violation of Generally Accepted Accounting Principles ("GAAP") and its own revenue

recognition policies as set forth in its Forms 10-Q filed during the Class Period;

     b.    that, contrary to the Individual Defendants express representations,

the Company's reported financial results did not fairly present the Company's results, rather,

such results reflected improper accounting; and

c.    that, as a result of the foregoing, the Company's reported financial results were materially false and misleading and deceived the class as to Sonus' historical performance and worth.

## The Truth Begins to Emerge

30.    On January 20, 2004, Sonus announced that it would delay releasing its results for the fourth quarter and full year 2003 results "pending the completion of its 2003 audit." The Company did not elaborate on why the audit was not completed in time.

31.    On February 14, 2003, the Company issued a press release after the close of ordinary trading, announcing that "Sonus Networks and its independent auditors have identified certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts, which may affect the Company's 2003 financial statements and possibly financial statements for prior periods." According to the release, the revenue issues relate to the timing of revenue recognition, which may have compromised the integrity of Sonus' reported financial statements:

> The revenue issues identified relate to the proper timing of recognizing revenue from certain customer transactions, and not whether the sales can be recorded as revenue. For the customer transactions under review, the products have been delivered, customers are using the products in their networks and Sonus Networks has either received payment or is receiving payment for the products in the ordinary course. The Company is reassessing the proper periods in which revenue should be recognized for these transactions. Revenue or deferred revenue in periods previously reported could increase, decrease or remain unchanged in those periods as a result of this reassessment.

> ***

> We are deeply concerned and disappointed to have discovered that certain employees at Sonus Networks were engaged in behavior that violated our code of conduct and may have compromised the integrity of our financial reporting," said Hassan Ahmed, president and CEO, Sonus Networks. "The Company responded promptly by taking appropriate measures to address these matters. We assure our shareholders, customers

11

and employees that our management and Board of Directors are committed to taking all necessary steps to complete our review in an expeditious and comprehensive manner, and to prevent such problems from occurring in the future.

The Company further announced that it had taken the following steps in order to deal with the

matter:

> The Company is performing a detailed review of the revenue timing issues and practices and of certain other financial statement accounts.

> The Audit Committee of Sonus Networks' Board of Directors is conducting an independent investigation, employing the services of Hale and Dorr LLP and PricewaterhouseCoopers.

> The Company has terminated certain non-executive employees.

> Sonus Networks has notified the Securities and Exchange Commission of the Company's independent investigation and is fully reporting the results of that ongoing investigation to the Commission.

32.    In reaction to this announcement, the price of Sonus common stock

plummeted, falling 19.4% in one day, from $6.69 per share on February 11, 2004 to $5.39 per

share on February 12, 2004, on trading volume of over 96 million shares, which is many times

the Company's average daily trading volume.

## Undisclosed Adverse Information

33.    The market for Sonus securities was open, well-developed and efficient at

all relevant times. As a result of these materially false and misleading statements and failures to

disclose, Sonus securities traded at artificially inflated prices during the Class Period. The

artificial inflation continued until at least February 11, 2004. Plaintiff and other members of the

Class purchased or otherwise acquired Sonus securities relying upon the integrity of the market

price of the Company's securities and market information relating to Sonus, and have been

damaged thereby.

34.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Sonus common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as detailed herein.

35.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Sonus' earnings. These material misstatements and omissions created in the market an unrealistically positive assessment of Sonus and its prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus leading to their losses when the illusion was revealed, and the market was able to accurately value the Company.

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

36.     At all relevant times, the market for Sonus' securities was an efficient market for the following reasons, among others:

(a)     Sonus' stock met the requirements for listing, and was listed and actively traded on the Nasdaq National Market, a highly efficient and automated market;

(b)     As a regulated issuer, Sonus filed periodic public reports with the SEC and the Nasdaq National Market;

(c)     Sonus regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Sonus was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

37.     As a result of the foregoing, the market for Sonus' securities promptly digested current information regarding Sonus from all publicly available sources and reflected such information in Sonus' stock price. Under these circumstances, all purchasers of Sonus' securities during the Class Period suffered similar injury through their purchase of Sonus' securities at artificially inflated prices and a presumption of reliance applies.

## ADDITIONAL SCIENTER ALLEGATIONS

38.     As alleged herein, defendants acted with scienter in that defendants knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading. In addition, defendants also knew that such statements or documents would be issued or disseminated to the investing public and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

14

39.     Defendants were strongly motivated to manipulate its recognition of revenues during the Class Period so that the Company's secondary offering, completed on September 23, 2003, could be priced higher than if the truth regarding Sonus' business was known.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sonus who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, Sonus and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout

the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sonus' securities; and (iii) cause plaintiff and other members of the Class to purchase Sonus' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

43.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sonus' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Sonus and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Sonus as specified herein.

45.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sonus' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Sonus and its business operations and future prospects in the light of the circumstances under which they were made, not

16

misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Sonus' securities during the Class Period.

46.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period; (ii) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (iii) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

47.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sonus' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sonus'

securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Sonus' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Sonus securities during the Class Period at artificially high prices and were damaged thereby.

49.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Sonus, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Sonus securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

18

53. Each of the Individual Defendants acted as a controlling person of Sonus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55. As set forth above, Sonus and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Sonus' and the Individual Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

19

(a)    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b)    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 13, 2004

**MOULTON & GANS, P.C.**

By: _____
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA  02109
Telephone:  (617) 369-7979

**MILBERG WEISS BERSHAD HYNES
& LERACH LLP**
Steven G. Schulman
Richard H. Weiss
Peter E. Seidman
Douglas J. Hoffman
Andrei V. Rado
One Pennsylvania Plaza – 49th Floor
New York, NY  10119
(212) 594-5300
Fax: (212) 868-1229

**Attorneys for Plaintiff**

20

Cauley Geller Bowman & Coates, LLP
2255 Glades Road, Suite 421A
Boca Raton, FL 33431
(561) 750-3000
(561) 750-3364 Facsimile

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

_Richard Curtis_ ("Plaintiff"), declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1.     Plaintiff has reviewed the _Sonos Networks_ complaint prepared by Cauley Geller Bowman & Coates, LLP, whom I designate as my counsel in this action for all purposes.

2.     Plaintiff did not purchase any common stock/securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.     The following includes all of Plaintiff's transactions during the Class Period specified in the complaint for the common stock/securities that are the subject of this action:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| Sonos Networks | Purchase | 850 | 9-26-00 | 7.15/share |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Please list additional transactions on a separate sheet if necessary.**

5.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:



6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _17_ day of _February_, 200_4_.

X _Richard Curtis_
SIGNATURE

Please fill out the additional information. Thank you.

Address:        1111 SW 15TH ST

                Boyton Bcat FL 33426

Phone No.:      561-734-2316

County of Residence:   Palm Beach