# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CHIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>Defendants. | Civil Action No. 04-CV-10294 DPW |
| MICHELLE TREBITSCH, On Behalf Of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL,<br><br>Defendants. | Civil Action No. 04-CV-10307 DPW |
| INFORMATION DYNAMICS, LLC, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., PAUL R. JONES, EDWARD N. HARRIS, J. MICHAEL O'HARA, HASSAN M. AHMED and STEPHEN J. NILL,<br><br>Defendants. | Civil Action No. 04-CV-10308 DPW |

**[Additional Captions Follow on Next Page]**

## MEMORANDUM OF LAW OF JAMES M. BROWER IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, FOR SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO ALL OTHER LEAD PLAINTIFF MOTIONS

| | |
|---|---|
| PETER KALTMAN, On Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10309 DPW |
| v. | |
| SONUS NETWORKS, INC., RUBEN GRUBER, HASSAN AHMED and STEPHEN NILL, | |
| Defendants. | |
| SAMANTHA DEN, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10310 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | |
| Defendants. | |
| RICHARD CURTIS, Individually And on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10314 MLW |
| v. | |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | |
| Defendants. | |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| RONALD KASSOVER, on Behalf of the Ronald Kassover IRA and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, <br><br> Defendants. | Civil Action No. 04-CV-10329 DPW |
| STEVE L. BAKER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, <br><br> Defendants. | Civil Action No. 04-CV-10333 DPW |
| MICHAEL KAFFEE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, <br><br> Defendants. | Civil Action No. 04-CV-10345 DPW |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| HAIMING HU, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>       Defendants. | Civil Action No. 04-10346 DPW |
| CHARLES STARBUCK, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>       Defendants. | Civil Action No. 04-CV-10362 DPW |
| SAMUEL HO, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>       Defendants. | Civil Action No. 04-CV-10363 DPW |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| JEFFREY C. RODRIGUES, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL,<br><br>        Defendants. | Civil Action No. 04-CV-10364 DPW |
| ROBERT CONTE and MARK RESPLER, Themselves and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>        Defendants. | Civil Action No. 04-CV-10382 DPW |
| WHEATON ELECTRICAL SERVICES RETIREMENT 401K PROFIT SHARING PLAN, On Behalf of Itself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, and STEPHEN NILL,<br><br>        Defendants. | Civil Action No. 04-CV-10383 DPW |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| BRIAN CLARK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., PAUL R. JONES, EDWARD N. HARRIS, J. MICHAEL O'HARA, HASSAN M. AHMED and STEPHEN J. NILL,<br><br>Defendants. | Civil Action No. 04-CV-10454 DPW |
| SHEILA BROWNELL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>Defendants. | Civil Action No. 04-CV- 10597 DPW |
| SAVERIO PUGLIESE, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL,<br><br>Defendants. | Civil Action No. 04-CV-10612 DPW |

**[Additional Captions Follow on Next Page]**

DAVID V. NOCITO, On Behalf of
Himself and All Others Similarly Situated,

                Plaintiff,

v.

SONUS NETWORKS, INC., HASSAN M.
AHMED, and STEPHEN J. NILL,

                Defendants.

Civil Action No. 04-CV-10623 DPW

      Proposed lead plaintiff James M. Brower submits this memorandum of law in further support of his motion to be appointed lead plaintiff in the consolidated securities class action and approve his selection and retention of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel and in opposition to all other lead plaintiff motions.

## I. PRELIMINARY STATEMENT

      Eleven competing motions for appointment of lead plaintiff and lead counsel are currently pending before this Court.[1]  Under the Private Securities Litigation Reform Act (the "PSLRA"), the Court is to appoint as the lead plaintiff the movant with the largest loss *and who otherwise satisfies Rule 23*.  15 U.S.C. 78u-4(a)(3)(B)(iii)(I) (emphasis added).  Of the eleven competing motions for lead plaintiff here, only three claim losses larger than Mr. Brower.  Each of these three movants, however, fails to satisfy the requirements of Fed. R. Civ. P. 23.  Accordingly, Mr. Brower should be appointed lead plaintiff.

---

[1] A total of twelve lead plaintiff applications were filed with the Court on April 12, 2004.  However, on April 22, 2004, Saverio Pugliese filed a notice of withdrawal of his application.  Accordingly, eleven motions are currently pending before this Court.

First, BPI Global Asset Management LLP ("BPI") is an asset management firm that acts only as an investment advisor to its clients, not an investor itself. BPI itself has suffered absolutely no loss and lacks standing to assert claims on behalf of the Class. As such, BPI is subject to unique defenses that preclude it from adequately representing the interests of the Class.

The second movant, Global Undervalued Securities Master Fund ("Global") is also incapable of adequately representing the Class. First, an employee of Kleinheinz Capital Partners, Inc. ("Kleinheinz"), Global's investment manager, signed Global's certification. Kleinheinz, however, suffered no loss because it acts merely as Global's manager, not an investor itself. As such, Kleinheinz has no standing to assert claims on behalf of the Class. Second, counsel for Global, Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss"), represents two competing movants (Global and the Jiang Group) in this action and currently serves as lead counsel in an earlier action currently pending before Judge Wolf filed against Sonus Networks Inc. and other defendants for violations of securities laws (the "Sonus 2002 Case"). Consequently, Milberg Weiss suffers from disabling conflicts which preclude its appointment as lead counsel in this action. Finally, Global is a hedge fund engaging in atypical trading strategies, which subjects it to unique defenses rendering it inadequate to represent the Class.

The third movant, The Farhat Group, is a lawyer-driven group that has failed to demonstrate that it is capable of adequately representing the Class. The Farhat Group consists of four individual investors, *each of whose losses are significantly less than Mr. Brower's losses*. As is plainly obvious, counsel for the Farhat Group cobbled together four unrelated individuals to put forth a "group" with a large financial interest so counsel

2

could be appointed as lead counsel. Such an arrangement clearly undermines the purpose of the PSLRA. Indeed, the Farhat Group has failed to provide the Court with any information regarding its members, their investments in Sonus, or their experience and ability to manage a complex litigation. The Farhat Group has also failed to provide information regarding how its members came together as a group and how acting as a group would benefit the Class. It appears that the four members had no relationship at all before this litigation and their commonality rests solely in their status as purchasers of Sonus stock and contact with the same counsel.

James M. Brower is the only movant who satisfies the requirements of Fed. R. Civ. P. 23. Mr. Brower, an individual residing locally in West Bridgewater, Massachusetts, has demonstrated his willingness and ability to adequately represent the Class. He has a significant financial interest in this litigation, suffering losses of $400,874.88 as a result of his purchase of 147,275 shares of Sonus common stock. Additionally, unlike the other movants discussed above, Mr. Brower is not subject to any unique defenses. In short, Mr. Brower is unquestionably the most adequate plaintiff to represent the Class in this litigation.

## II. ARGUMENT

### A. The PSLRA Favors The Appointment Of Mr. Brower As Lead Plaintiff

Mr. Brower has signed a certification form stating that he has reviewed the complaint; authorized the filing of a complaint on his behalf; and is willing to serve as a representative party on behalf of the Class in compliance with Section 78u-4(a)(3)(B)(iii)(I)(aaa) of the PLSRA. During the Class Period, Mr. Brower suffered

losses of $400,874.88 as a result of the purchase of 147,275 shares of Sonus common stock.  Thus, Mr. Brower has a significant financial interest in this action.

Moreover, Mr. Brower is the *only* movant who satisfies the requirements of Fed. R. Civ. P. 23.  Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative.  *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (recognizing that plaintiffs seeking appointment as lead plaintiff need only make preliminary showing that they satisfy Rule 23 typicality and adequacy requirements).  Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  *See Gluck v. CellStar Corp.,* 976 F. Supp. 542, 546 (N.D. Tex. 1997).

There can be no real dispute that Mr. Brower satisfies the typicality requirement of Rule 23(a).  Mr. Brower's claims are typical of, if not identical to, the claims of the other members of the Class.  Like the other members of the Class, Mr. Brower's claims arise from the same events or course of conduct, namely that Sonus and the individual defendants issued false and misleading statements concerning the Company's financial results and thereby inflated Sonus' stock price.  *Lernout & Hauspie*, 138 F. Supp. 2d at 46 (typicality requirement satisfied where plaintiffs' claim "arise from the 'same events or course of conduct'") (citation omitted).

Additionally, similar to all of the other members of the Class, Mr. Brower relied upon the integrity of the market in purchasing Sonus common stock during the Class Period and suffered damages thereby.  Further, his claims are based on the same legal

theory as the other members of the Class.  *See Lernout & Hauspie*, 138 F. Supp. 2d at 46

(typicality satisfied when a "named plaintiffs' claims arise from the 'same events or

course of conduct' and involve the same legal theory as do the claims of the rest of the

class") (quoting *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D.

Mass. 1991)).

     Mr. Brower also satisfies the adequacy requirement of Fed. R. Civ. P. 23.  Unlike

the other movants, Mr. Brower has no conflicts or interests antagonistic to those of the

Class.  *Lernout & Hauspie*, 138 F. Supp. 2d at 46 (typicality requirement satisfied where

plaintiff has common interests with class members and absence of conflict with class

members).  His interest, like all Class members, is to recover the maximum possible

damages from the defendants.  Indeed, the large loss suffered by Mr. Brower creates an

incentive to maximize the recovery in this case.

     Furthermore, Mr. Brower has selected a qualified law firm, Berman DeValerio, as

Lead Counsel.  *Lernout & Hauspie*, 138 F. Supp. 2d at 46 (typicality requirement

satisfied where plaintiff selected qualified, experienced attorneys vigorously able to

conduct litigation).  Berman DeValerio has appeared before this Court on many

occasions representing classes in securities actions and is thoroughly competent to

represent the Class in this case.  The firm has represented institutional and other investors

in many major class actions.

     Accordingly, there can be no doubt that Mr. Brower has amply demonstrated his

ability to oversee this action and to act in the best interest of the Class to obtain the

maximum recovery.  Based on these facts, Mr. Brower is the most adequate lead plaintiff.

### B. The Three Movants Alleging Larger Losses
### Are Incapable Of Representing The Class

While three movants (BPI, Global, and the Farhat Group) purport to have larger

losses than Mr. Brower, the PSLRA only provides a presumption of adequacy to the

plaintiff with the largest financial interest in the relief sought if - *and only if* - such

plaintiff otherwise satisfies the applicable requirements of Rule 23 and the PSLRA.  *See*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The PSLRA explicitly provides that the presumption

may be rebutted by evidence that the proposed lead plaintiff will not "fairly and

adequately protect the interest of the class" or "is subject to unique defenses that render

such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).  The statutory presumption of adequacy applicable to each of the three

movants here is effectively rebutted.

#### 1. BPI Is Incapable Of Representing The Class

##### a. BPI Has No Standing To Bring Claims
##### On Behalf Of The Class

While BPI purports to have larger losses than Mr. Brower and all other proposed

lead plaintiffs, the statutory presumption of adequacy is rebutted because BPI is subject

to unique defenses and suffers from fatal class certification infirmities that render it

incapable of adequately representing the Class.  Specifically, BPI has no standing to

bring claims on behalf of the Class.  BPI is an investment management firm that provides

global and international investment products to pensions, endowments, foundations, and

mutual funds in the United States and Canada.  *See* Nelson Information's Directory of

Investment Managers 747-48 (2002) (Attached hereto as Ex. A).  BPI simply manages

portfolios for various clients, acting purely as an investment advisor, not an investor.  As

such, it is BPI's clients – not BPI itself – that suffered losses as a result of the purchases of Sonus common stock.

Indeed, at least one other federal court has already deemed BPI incapable of representing a class of investors in a securities fraud action. In *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002), BPI moved to certify the class in an action alleging securities laws violations against Turkcell Iletisim Hizmetler, A.S. ("Turkcell"). *Id.* at 355. The court declined to certify BPI as a class representative, noting that BPI had no standing to bring claims on behalf of the class. *Id.* at 358. The court reasoned that BPI acted purely as an investment advisor, investing funds only on behalf of its clients. *Id.* at 357. As such, BPI was not itself an investor and any pecuniary loss it may have suffered was purely in a representative capacity rather than as an investor. *Id.* at 358. As the court stated, "The fact that BPI was not the legal purchaser of Turkcell stock prevents them from suing on behalf of its investors." *Id.*

Without standing to bring claims on behalf of the Class, and without suffering any loss, BPI cannot be appointed as the lead plaintiff. *See Davidson v. Belcor, Inc.*, 933 F.2d 603, 606 (7th Cir 1991) ("[O]nly actual purchasers and sellers of securities have standing to pursue private causes of action under the anti-fraud provisions of the Securities Exchange Act of 1934."); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634 (D.N.J. 2002) (money manager denied appointment as lead plaintiff because it "may not bring the action on behalf of its clients because it did not function as a 'single investor' and it has not submitted any evidence that it received permission to move on its clients' behalf."); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (holding that investment manager with largest aggregate losses was not most adequate

plaintiff because, among other things, it was not buying stock in question for its own

account, but rather for investors who were participants in managed funds); *Prudential Ins.*

*Co. v. BMC Indus., Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y. 1987) (recognizing that party with

standing to sue under Rule 10b-5 is the beneficial owner of stock who was actually harmed,

and not its "Sponsor, Administrator and Named Fiduciary").

### b.  BPI Filed Its Application In Violation Of The PSLRA

Further, BPI filed its application in violation of the PSLRA.  In the certification

filed with its complaint, BPI states that "During the three years prior to the date of this

Certificate, BPI has not sought to serve and has not served as a representative party *in*

*five or more* class action cases filed under the federal securities laws."  *See* BPI's

Certification, attached as Exh. A to the Declaration of Joseph M. Barton submitted with

BPI's moving papers (emphasis added).  This statement, however, does not comply with

the PSLRA.  Rather, the PSLRA states that each person seeking to serve as lead plaintiff

must file a sworn certification specifically identifying any other action in which he or she

sought to serve as a representative party.  *See* 15 U.S.C. § 78u-4(a)(2)(A)(v) ("[e]ach

plaintiff seeking to serve as a representative party on behalf of a class shall provide a

sworn certification, which shall be personally signed by such plaintiff and filed with the

complaint, that--. . . identifies any other action under this title, filed during the 3-year

period preceding the date on which the certification is signed by the plaintiff, in which

the plaintiff has sought to serve as a representative party on behalf of a class.").  Despite

this explicit requirement, BPI failed to disclose that it sought to serve as a representative

party in *Turkcell*, presumably in an attempt to conceal the *Turkcell* court's adverse ruling

that BPI was incapable of representing investors in a securities fraud class action.  BPI's

lack of candor and blatant disregard for the laws governing private securities actions

further undermine its argument that it should be lead plaintiff.

### 2.  Global Is Not The Most Adequate Lead Plaintiff

#### a.  Global's Manager Lacks Standing To Assert Claims On Behalf Of The Class

Although Global claims to have suffered losses greater than Mr. Brower, the

statutory presumption of adequacy is rebutted as to it.  Cherish Plemons is the signatory

to Global's certification filed with its lead plaintiff papers.  Plemons is employed by

Kleinheinz, the manager of Global, not Global itself.  *See* Institution Profile, printed from

Big Dough Investor Relations Manager, attached hereto as Exhibit B.  Global, however,

is the entity that invested in Sonus stock and suffered losses thereby, not Kleinheinz.

Kleinheinz acts only as Global's investment manager, not an investor itself, and

therefore, like BPI, lacks standing to assert claims on behalf of the Class.  *See Davidson*,

933 F.2d at 606 ("[O]nly actual purchasers and sellers of securities have standing to pursue

private causes of action under the anti-fraud provisions of the Securities Exchange Act of

1934."); *Suprema Specialties,* 206 F. Supp. 2d at 634 (holding that money manager "may

not bring the action on behalf of its clients because it did not function as a 'single

investor' and it has not submitted any evidence that it received permission to move on its

clients' behalf."); *In re Bank One*, 96 F. Supp. 2d at 783-84 (holding that investment

manager with largest aggregate losses was not most adequate plaintiff because, among other

things, it was not buying stock in question for its own account, but rather for investors who

were participants in managed funds); *Prudential Ins. Co.*, 655 F. Supp. at 711  (recognizing

that party with standing to sue under Rule 10b-5 is the beneficial owner of stock who was

actually harmed, and not its "Sponsor, Administrator and Named Fiduciary").

9

*Tellingly, Global does not even mention Kleinheinz once in its moving papers or in its certification.* Considering the fact that an employee of Kleinheinz signed the certification, Global's failure to mention Kleinheinz anywhere in its moving papers demonstrates a lack of candor. Indeed, Global appears to have deliberately hid the fact that it did not itself sign the certification and presumably, Global did not even review the complaint, authorize the filing of the complaint on its behalf, or express any willingness to represent the Class in this action.

Furthermore, Plemons does not even appear to be an officer or top executive with authority to make decisions on behalf of Kleinheinz, no less Global. Rather, she appears simply to be an analyst at Kleinheinz. *See* Institution Profile, printed from Big Dough Investor Relations Manager, attached hereto as Exhibit B. As such, Plemons lacked the authority to sign the certification in the first place.

### b. Global's Counsel Has Impermissible Conflicts Of Interest

Moreover, Global is incapable of adequately representing the Class because its counsel has impermissible conflicts of interest. First, Global's proposed lead counsel, Milberg Weiss, represents two competing movants in this case (Global and the Jiang Group).[2] Global's counsel's attempt to represent two competing movants in this action creates an impermissible conflict of interest that precludes them from adequately representing the Class in this action.

---

[2] As discussed herein, the Jiang Group is not the most adequate lead plaintiff, as it alleges losses of $102,634.66, which is substantially lower than Mr. Brower's losses. Nevertheless, Milberg Weiss' representation of both Global and the Jiang Group demonstrates its inadequacy to be lead counsel in this action.

Additionally, by order dated November 29, 2002, Milberg Weiss was appointed lead counsel in the Sonus 2002 Case currently pending before Judge Wolf in the District of Massachusetts.  Now, Milberg Weiss seeks appointment as lead counsel in this action.[3]

It is well established that "[c]lass counsel must act with unwavering and complete loyalty to the class members they represent, and the 'responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.'"  *Krim v. pcOrder.com, Inc., et al.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) (quoting *Sullivan v. Chase Inv. Servs. Of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978)).  Milberg Weiss' attempt to represent multiple classes of shareholders in multiple suits against the same defendants also creates a conflict of interest that precludes them from adequately representing the Class in this action.  Both the Sonus 2002 Case and this action will be seeking recovery from the same limited sources of funds, particularly the Company's assets and any applicable liability insurance policies, and conflicts exist if there were competing judgments that defendants could not satisfy.  Moreover, Milberg Weiss cannot "act with unwavering and complete loyalty" to both groups of shareholders, whose interests may not coincide.

The court in *Krim* encountered this same situation with Milberg Weiss.  In *Krim*, Milberg Weiss represented different classes of pcOrder.com shareholders in multiple lawsuits against the company.  *Krim*, 210 F.R.D. at 589.  In denying class certification, the court squarely rejected Milberg Weiss' argument that no conflict existed in representing shareholders in the various cases.  *Id.*  As the court held:

> [T]he case law deems the *appearance* of conflict problematic, and actual and apparent conflict currently exist.  Counsel did not timely

---

[3] The Sonus 2002 Case alleges a class period of December 11, 2000 through and including January 16, 2002, which is well before the Class Period in this action.

>disclose their participation in multiple class respresentations to
>their clients . . . With multiple lawsuits, more than a fair chance
>exists that the shareholders represented in the various suits may be
>different but overlapping groups of people, and their interests may
>not always coincide.

*Id.* at 590.

Similarly, in *Sullivan*, the court ordered the withdrawal of counsel where counsel for the proposed class were already class counsel in another action pending against the same defendant.  The court held "[t]he possibility that assets and insurance of the defendants who may have committed fraud against the plaintiffs will be insufficient to satisfy an alleged liability of the class of over $20 million is great enough to influence litigation strategy."  *Sullivan*, 79 F.R.D. at 258; *see also Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) (finding proposed counsel inadequate where counsel represented plaintiffs in parallel actions because "potential class members are at risk that counsel will trade off the interests of certain of its clients to the detriment of other clients"); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) (finding conflict where plaintiff's counsel represents two classes in separate actions seeking recovery from a common pool of assets); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 192-93 (N.D. Ohio 1984) (finding that the requirements of Fed. R. Civ. P. 23(a)(4) were not met where counsel for the proposed class represented other plaintiffs in an action against the same defendants in a different court).

### c.  Global Is A Hedge Fund Subject To Unique Defenses

Additionally, Global is incapable of adequately representing the Class because it is a hedge fund and therefore, subject to unique defenses.  *See, e.g., In re Bank One*, 96 F. Supp. 2d at 783-84 (refusing to appoint hedge fund lead plaintiff); *In re Conseco*, 120 F.

Supp. 2d at 733 (S.D. Ind. 2000) (rejecting lead plaintiff application filed by hedge fund).

As a hedge fund, Global admittedly engages in atypical trading strategies, such as short

selling.  Courts have repeatedly held that investors engaging in short selling are

inadequate lead plaintiffs.  *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102,

1109 (N.D. Cal. 2001) ("[i]t is a poor choice to appoint a class representative who

engaged in a trading practice premised on the belief the stock would fall"); *In re Bank*

*One*, 96 F. Supp. 2d at 783-84 (refusing to appoint as lead plaintiff investor engaging in

short sales); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va.

2000) (refusing to appoint as lead plaintiff "atypical investor that engages in transactions

far beyond the scope of what a typical investor contemplates"); *Weikel v. Tower*

*Semiconductor, Ltd.*, 183 F.R.D. 377, 392 (D.N.J. 1998) (declining to appoint as lead

plaintiff short seller).

Indeed, if Global engaged in short sales of Sonus stock, it could subject itself to

the defense that it did not rely upon the market price of Sonus stock in making its

decision to purchase the stock.  Thus, the fraud on the market theory, which is central to

the Class' claims in this action, may not be available to Global.  *See Critical Path*, 156 F.

Supp. 2d at 1110 ("[s]hort sales raise the question of whether the seller was actually

relying on the market price"); *Weikel*, 183 F.R.D. at 392 (concluding short seller

inadequate because of inability to rely on fraud on the market presumption).

### d.  Global Fails To Demonstrate An Ability To Adequately Represent The Class

Moreover, Global fails to provide the Court with any information about its

qualifications or ability to manage this litigation.  Global merely filed a perfunctory

certification, which it did not even sign, devoid of any meaningful information.  For

13

example, Global's moving papers are silent as to what Global is; what assets it has and

who manages the assets; who is responsible for managing this litigation; what

qualification they have; their familiarity with the securities laws; and their ability to

discharge their fiduciary duties as lead plaintiff. *See In re Conseco,* 120 F. Supp. 2d at

732 ("bare certification form" failed to demonstrate adequacy of proposed lead

plaintiffs).

### 3.  The Farhat Group Is Not The Most Adequate Lead Plaintiff

The Farhat Group also claims to have suffered losses greater than Mr. Brower.

However, the Farhat Group should not be appointed lead plaintiff because it fails to

satisfy the requirements of Fed. R. Civ. P. 23.

As a threshold matter, Mr. Brower's losses far exceed each of the individual

members of the Farhat Group's losses.  Moreover, where a proposed lead plaintiff is a

group of persons, like the Farhat Group here, courts have required the plaintiff to inform

the court as to how the group was formed and how its members will work together to

effectively manage the litigation.  *See Howard Gunty Profit Sharing Plan v. Carematrix*

*Corp.*, No. C.A. 99-12318-MLW, 2000 WL 33348124, at *5 (D. Mass. Aug. 15, 2000)

(noting proposed lead plaintiff group should "explain its members' association, how they

came to form a group, and how they would work together"); *Lernout & Hauspie*, 138 F.

Supp. 2d at 45 (proposed lead plaintiff group should explain and justify its composition

and structure, including describing its members, how its members would function

collectively, and mechanisms its members and proposed lead counsel have established to

communicate); *In re Lucent Techs. Inc. Sec. Litig.*, 194 F.R.D. 137, 151 (D.N.J. 2000).

14

For example, in *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999), the proposed lead plaintiff failed to provide any "meaningful information about the identity of its seven member other than to offer their names, a summary of the transactions by which they purchased [the company's] securities, and the 'simple mathematical' conclusion that they have the largest financial interest in the case." *Id.* at 250. Additionally, the group offered only conclusory assertions regarding its ability to serve as lead plaintiff and its competence to manage the litigation. *Id.* As a result, the court concluded that the proposed lead plaintiff failed to demonstrate its adequacy and refused to appoint the group as lead plaintiff. *Id.*

Here, the Farhat Group has failed to provide any meaningful information about its four members and its ability to adequately represent the Class. The joint declaration submitted by the Farhat Group is deficient. It fails to demonstrate how its members came together as a group. Indeed, there is no evidence that the members even knew of one another until this lawsuit. Their only connection to each other appears to be that they contacted the same law firms, who aggregated their losses simply for the purpose of attempting to create the largest financial loss. *Critical Path*, 156 F. Supp. 2d at 1111 (declining to appoint group of investors lead plaintiff where they lacked preexisting relationship); *In re Network Assoc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999) ("To enable the court to assess whether the proposed group is capable of performing the lead plaintiff function, it should provide appropriate information about its members, structure, and intended functioning. Such information should include descriptions of its members, including any pre-existing relationships among them"); *In re Lucent Tech., Sec. Litig.*, 194 F.R.D. at 151 (holding proposed group should provide

information to the court encompassing, at minimum "a description of the members, an explanation of how the group was formed, whether there was a pre-existing relationship among any of the members").[4]

Moreover, an individual investor such as Mr. Brower is a more adequate lead plaintiff than a group of unrelated investors such as the Farhat Group.  *Network Assoc.*, 76 F. Supp. 2d at 1026-27 (concluding "[a]rtificial aggregation of [group of unrelated investors] should never be allowed for any purpose" and instead appointing single movant lead plaintiff).  Unlike the Farhat Group, appointing Mr. Brower lead plaintiff is consistent with the PSLRA's goal of client control of the litigation.  *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) ("[i]ncreasing the number of Lead Plaintiffs [will] detract from the Reform Act's fundamental goal of client control as it [will] inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers") (citation omitted);  *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 815-16 (N.D. Ohio 1999) ("The larger the group, the less incentive any single member of the group . . . will have to exercise any supervision or control over the litigation"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff . . . . To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their

---

[4] *See also In re Waste Mgmt. Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (requiring lead plaintiff group to have "pre-litigation relationship based on more than their losing investment"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) (lead plaintiff group must consist of "more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1152-54 (N.D. Cal. 1999) (defining group as "small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person"); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 417-18 (D.N.J. 1998) (noting PSLRA "forecloses the appointment of . . . multiple persons not part of a cohesive group").

financial stakes would allow and encourage lawyers to direct the litigation"). In addition

to the practical aspects of coordinating with counsel and making decisions regarding the

litigation, limiting the designation of lead plaintiff to one investor such as Mr. Brower

who individually suffered the larger loss will prevent the dilution of the fiduciary duty the

lead plaintiff has to the members of the class.[5]

### C. The Remaining Movants' Losses Are Inferior To Mr. Brower's Losses

As demonstrated by the chart below, Mr. Brower's losses of $400,874.88

significantly exceed the losses of each of the remaining movants for lead plaintiff.

Accordingly, all of the remaining movants fail to satisfy the most adequate plaintiff

requirement of the PSLRA and their motions should be denied. *See* 15 U.S.C. § 78u-

4(a)(3)(B)iii)(I).[6]

| Proposed Lead Plaintiff | Proposed Lead Counsel | Proposed Liaison Counsel | Claimed Loss |
|---|---|---|---|
| Marc Wexler, Scott Baugh, Sajid Patel, Carlos Rios, Thomas Munson (Wexler Group)[7] | Cauley Geller Bowman & Rudman | Shapiro Haber & Urmy | $365,863.90 |
| Brad Rollow | Schatz & Nobel; Ragsdale & Frese | | $209,270 |
| Grace I. Belland, Leopoldo L. Mestre, | Murray, Frank & Sailer; Weiss & Yourman | Shapiro Haber & Urmy | $123,874.35 |

---

[5] The Farhat Group claims to have a way of resolving disagreements among them – "majority rules" – but fails to explain how this benefits the Class or what will happen if the Group is evenly divided.

[6] As previously mentioned, Saverio Pugliese also filed a lead plaintiff application on April 12, 2004, but subsequently withdrew his application on April 22, 2004. Accordingly, Mr. Pugliese is not included in this chart. Nevertheless, while Mr. Pugliese's application for lead plaintiff was insufficient (as it contained only a series of purchases and sales of Sonus stock and failed to include any analysis regarding his losses) a review of his transactions suggest a loss of approximately $43,000, which is substantially inferior to Mr. Brower's losses.

[7] Additionally, for the reasons discussed above in Section II.B.3, the Wexler Group is not the most adequate lead plaintiff, particularly considering it is composed of *five* individual investors. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.C. 1999) (setting five or six as "upper limit" of persons for lead plaintiff group).

| Jacob I. Sherman, Scott L. Dunkley, Abdul S. Budhinani, Sean P. McCarthy (Belland Group)[8] | | | |
|---|---|---|---|
| Tian Jiang, Joseph Rodulavic, Gary Brost (Jiang Group)[9] | Milberg Weiss Bershad Hynes & Lerach | Moulton & Gans | $102,634.66 |
| Mohammad Akhtar | Pomerantz Haudek Block Grossman & Gross | Law Offices Richard J. Vita | $45,440 |
| Chris E. Paterick | Wolf Popper | Shapiro Haber & Urmy | $30,440 |
| Jeffrey Foss | Abbey Gardy | Law Office of Michael F. Germano | $28,057.14 |

## III.    CONCLUSION

For all the foregoing reasons, James M. Brower respectfully request that this Court: (i) consolidate all related actions; (2) appoint him as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (3) approve his selection of Berman DeValerio as lead counsel for the Class.

Dated:  April 26, 2004                    Respectfully submitted,

                                   **BERMAN DEVALERIO PEASE
                                    TABACCO BURT & PUCILLO**

                                   /s/ Michael T. Matraia
                                   Jeffrey C. Block, BBO # 600747
                                   Michael T. Matraia, BBO # 633049
                                   Nicole R. Starr, BBO #654848
                                   One Liberty Square
                                   Boston, Massachusetts 02109
                                   (617) 542-8300

                                   **Attorneys for Plaintiff James M. Brower
                                   and Proposed Lead Counsel**

---

[8] Additionally, for the reasons discussed above in Section II.B.3, the Belland Group is not the most adequate lead plaintiff, particularly considering it has *six* members. *See Baan*, 186 F.R.D. at 217 (setting five or six as "upper limit" of persons for lead plaintiff group).

[9] Additionally, for the reasons discussed above in Section II.B.3, the Jiang Group is not the most adequate lead plaintiff.

Eduard Korsinsky
Zimmerman Levi & Korsinsky, LLP
39 Broadway, Suite 1440
New York, NY  10006
(212) 363-7500

Sonus/p/LP_OppMemo